UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADRIAN LEWIS CHATEN,

                                    Plaintiff,

        v.

RON VAN  BOENING, DANIEL
FITZPATRICK, MIKE HINES,
MICHAEL A. FLEMMING, RYAN T.
DENZER, and GEORGE GILBERT,

                                    Defendants.

No. C09-5615 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  November 18, 2011**

Before the Court are the motions for summary judgment of Plaintiff Adrian Lewis Chaten (ECF No. 51) and the four remaining Defendants Mike Hines, Michael A. Flemming, Ryan T. Denzer, and George Gilbert (ECF No. 56).  Defendants have also filed a motion to strike Plaintiff's August 29, 2011 response to their motion for summary judgment (ECF No. 59) because the response was filed three days after the noting date.  ECF No. 60.  Other than being three days late, the response is not signed by Plaintiff.  ECF No. 59, p. 4.  However, the Court notes that the attachments to Plaintiff's response are already part of the record and therefore, have been considered by the Court.  Having carefully reviewed the motions, evidence, and balance of the record, the Court finds that Plaintiff's motion for summary judgment should be denied and Defendants' motions to strike and for summary judgment should be granted.

**SUMMARY OF CLAIMS**

Mr. Chaten is proceeding on his First Amended Complaint against Defendants Ron Van Boening, Daniel Fitzpatrick, Michael C. Hines, Michael C. Fleming, Ryan T. Denzer, and

REPORT AND RECOMMENDATION - 1

George Gilbert. ECF No. 9. Mr. Chaten signed the amended complaint but did not do so under penalty of perjury. In summary, Mr. Chaten claims that while he was housed in administrative segregation during an investigation into allegations that he sexually abused another inmate at the McNeil Island Corrections Center (MICC), Defendants changed his classification level and recommended him for an intensive management program (IMU Program) without first providing him a hearing. Mr. Chaten was never charged or infracted for the alleged sexual assault. *Id.*, pp. 1-6; ECF No. 52. Mr. Chaten appealed the IMU program decision, claiming that he was denied due process of law because he had received no written reports, there was no finding of guilt, and no evidence to support the decision of the Facility Risk Management Team (FRMT). ECF No. 52, p. 10. The appeal was denied.

Mr. Chaten alleges that placement in the IMU program affected his ability to program within MICC and further his education, and that the placement caused him to lose classification points which determine the level of liberty an offender has while at MICC. He also complains that his minimum custody classification has been increased to a "closed" custody classification. ECF No. 9, pp. 5-6.

**PROCEDURAL BACKGROUND**

On November 15, 2010, the Court granted Defendants' motion to dismiss as to Mr. Chaten's equal protection claim and all claims against Defendants Fitzpatrick and Van Boening. ECF No. 45. His due process claim against Defendants Mike Hines, Michael A. Flemming, Ryan T. Denzer, and George Gilbert remains and is the subject of the parties' motions. ECF Nos. 51 and 56. Mr. Chaten filed a motion for summary judgment, memorandum in support, and response. ECF Nos. 51, 52, and 55. Like the amended complaint (ECF No. 9), these pleadings are not sworn to under penalty of perjury. The only evidence Mr. Chaten tenders in support of

REPORT AND RECOMMENDATION - 2

his motion are two letters from the Pierce County Prosecuting Attorney regarding a public records request made by Mr. Chaten on April 21, 2011 relating to the investigation sent to the prosecutor's office by Defendant George Gilbert "pursuant to an infraction written regarding Adrian Chaten on July 6, 2008." ECF No. 55, pp. 15-20.

Similarly, Mr. Chaten's response to Defendants' motion for summary judgment is neither signed nor sworn to under penalty of perjury. ECF No. 59, p. 4. The response has no certificate of mailing, but the Clerk's office stamp indicates that it was filed on August 29, 2011, three days after the noting date of the motion. Mr. Chaten filed a subsequent response (ECF No. 61) in which he alleges he mailed his initial response to the Defendants' motion for summary judgment on August 24, 20011. The response was due no later than 4:30 p.m. on Monday, August 22, 2011. The Plaintiff's response was late. However, as previously noted, the attachments are already part of the record. As the response is untimely, it will not be considered.

Mr. Chaten has provided no evidence in support of his motion for summary judgment. None of the facts and conclusions contained in his amended complaint or in support of his motion are sworn to under penalty of perjury or otherwise authenticated. Mr. Chaten has produced no documentary evidence except for the two letters relating to his records requests. Thus, there are no facts which could be authenticated at trial in support of his claims. *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003). For a recitation of the relevant facts, the Court turns to Defendants' Counter Statement of Facts (ECF No. 54) and the Statement of Relevant Facts contained in their motion for summary judgment (ECF No. 56).

## FACTS

**A.      Classification Review Process**

Washington law requires offenders serving judgments and sentences to work in a job

assigned to them by the prison, to program, or go to school:

> The department shall adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges. The system shall include increases or decreases in the degree of liberty granted the inmate within the programs operated by the department, access to or withholding of privileges available within correctional institutions, and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance.

Wash. Rev. Code (RCW) § 72.09.130(1).

Washington's State Constitution (Wash. Const. Art. II § 29) and administrative rules require that inmates work or program. The Department of Corrections (DOC) has designated refusing a work or programming assignment as a serious infraction. Wash. Admin. Code (WAC) § 137-25-030(557) (557) ("Refusing to participate in an available education or work program or other mandatory programming assignment.").

There are three components to an offender's classification review: custody designation, program needs and expectations, and facility placements. ECF No. 56, Exh. 2 (Declaration of Earl Wright), ¶8; ECF No. 54-1 (DOC Policy 300.380 "Classification and Plan Review"), p. 17. Classification reviews are documented in the Custody Facility Plan. *Id.* If there is significant new risk-related information or behavior, the Custody Facility Plan must be changed. ECF No. 56, Exh. 3 (Declaration of Daniel Fitzpatrick), ¶5. Whenever an offender is transferred to a different facility, the Custody Facility Plan includes programming and behavioral expectations. ECF No. 56, Exh. 3 (Wright Dec.), ¶8; ECF No. 54-1 (DOC 300.380), p. 25. Custody designations impact offender placement within DOC. ECF No. 56, Exh. 2 (Wright Dec.), ¶8.

REPORT AND RECOMMENDATION - 4

Intensive Management Units (IMU) programs are one type of program designation and not all DOC facilities have intensive management units equipped to house offenders who are on IMU status. *Id.*

When an offender first arrives at DOC, an initial classification is conducted. ECF No. 56, Ex. 2 (Wright Dec.), ¶9; ECF No. 54-1 (DOC 300.380), p. 17. Work and educational programs are designed to address offender needs which will help prevent the offender from reoffending by providing skills and tools which he or she lacks upon arrival at DOC. ECF No. 56, Exh. 2 (Wright Dec.), ¶9. The offender's criminal history is an important factor in determining suitable programming. *Id.* Each offender's program includes specific expectations for his conduct and progress with the program. *Id.*

Throughout an offender's incarceration, offender program recommendations may change based upon changes in circumstances such as recent changes in an offender's behavior which put the offender, other offenders, DOC staff, visitors and volunteers at risk of harm. ECF No. 56, Ex. 2 (Wright Dec.), ¶11. For example, when a claim arises and evidence exists to believe that an offender has raped or sexually assaulted another offender, DOC segregates the offending inmate pending investigation into the allegations. *Id.*, ¶11; ECF No. 54-1 (DOC 320.200 "Administrative Segregation"), pp. 5-14. The administrative segregation policy permits the placement of offenders on administrative segregation status pending investigation. ECF No. 56, Ex. 2 (Wright Dec.) (DOC Policy 320.200, ¶12; Ex. 4 (Denzer Dec.), ¶7; ECF No. 54-1 at pp. 6-14 (DOC 320.200). Administrative Segregation Reviews are held weekly for the first two months an offender is on administrative segregation status. ECF No. 56, Ex. 2 (Wright Dec.), ¶12; ECF No. 54-1, p. 4.

REPORT AND RECOMMENDATION - 5

In the segregation units, offenders are given a copy of the AD SEG/IMU HEARING NOTICE/APPEARANCE WAIVER form (DOC Form 05-797) prior to their weekly hearing. ECF No. 56, Exh. 4 (Denzer Dec.), ¶5. In addition to serving as notice for offenders of their weekly administrative segregation hearings, the form is required to be used for offenders housed in administrative segregation whenever a Facility Risk Management Team (FRMT) Classification meeting is to be held. *Id.*; ECF No. 54-1 (DOC 320.200), p. 8. Each Form 05-797 explains the reason for the hearing (i.e. whether for weekly administrative segregation review or FRMT classification review), informs the offender of his right to request witness statements, provides empty boxes for the offender to write the staff witness name from whom he or she wishes to provide a written statement, and various other rights. ECF No. 56, Ex. 4 (Denzer Dec.), ¶5; ECF No. 54-1 (DOC 320.200), pp. 7-9. The offenders are also given the option to waive certain rights including their right to 48 hours notice prior to their hearing. *Id.*

In 2008, during administrative segregation hearings in MICC's segregation unit, Administrative Segregation Hearing Officer Denzer was responsible for informing segregation unit offenders why they had been placed in administrative segregation, provide new information (if applicable) regarding pending investigations, make a written record summarizing offender statements made during the hearing, explain the segregation unit's behavior expectations, and report negative or positive behavior. ECF No. 56, Ex. 4 (Denzer Dec.), ¶6. At the end of each administrative segregation hearing, it was Officer Denzer's duty to recommend release or continued administrative segregation placement. *Id.* Thereafter, his written recommendation was sent to the Correctional Unit Supervisor for approval, and then to the MICC Superintendent/designee for a final decision. *Id.*

If an offender is retained on administrative segregation status for more than 60 days, he will have a classification review by his FRMT and Superintendent/Designee to determine whether to refer him to the Prisons Deputy Secretary/ designee for placement on IMU status, to return him to the general population, or to transfer to a more appropriate facility which may enhance the possibility of the offender's return to general housing.  ECF No. 56, Ex. 2 (Wright Dec.), ¶12; Ex. 4 (Denzer Dec.), ¶7; Exh. 5 (Declaration of Michael Flemming), ¶8; ECF No. 54-1, p. 6 (DOC 320.200); WAC 137-32-025.

Each FRMT makes classification recommendations by way of the offender's Custody Facility Plan based on the facts known to the FRMT at the time of classification review.  ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶6.  The Custody Facility Plan is a Classification plan which addresses the offender's custody, program and facility concerns and is based upon many factors.  *Id*.; ECF No. 54-1, p. 21-22 (DOC 300.380).  For offenders who are in administrative segregation pending investigation, classification reviews occur weekly.  ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶6.

Pursuant to DOC Policy 590.350, offender change programs include a variety of educational, vocational, behavioral and treatment programs.  ECF No. 56, Ex. 5 (Flemming Dec.), ¶4.  The purpose of offender programming is to provide skills and tools to help individual offenders prepare for, and succeed upon, their release from incarceration.  *Id.*  Programming recommendations are individualized and are based upon a variety of factors including the offender's specific needs as determined, in part, by the FRMT.  *Id.*  Behavioral programming, for example, helps offenders learn and apply positive social lifestyle skills rather than criminal lifestyle behavior.  *Id.*  DOC's goal is to have offenders leave DOC and not return/reoffend.  *Id.*

Offenders in DOC's IMUs are required to actively participate in or complete designated programs consistent with their Individual Behavioral Management Plan (IBMP)/Individualized Treatment Plan (ITP). ECF No. 54-1 (DOC Policy 320.255 "IMU/ITU /Segregation/Mental Health Segregation Operations"), p. 59. Program opportunities consistent with reasonable facility safety and security measures are provided. Active participation in programming opportunities is required and failure to participate is cause to deny a level promotion. *Id.* Pursuant to DOC 320.255, IMU offenders are able to receive promotions through a system of levels/progressive steps which award them for positive behavior. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶9; ECF No. 54-1 (DOC 320.255), p. 54. Offender expectations are clearly identified for offenders who are given an IMU program and their promotions are typically tied to their success in achieving the identified expectations. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶9; ECF No. 54-1 (DOC 320.255), pp. 55-59.

**B.    Mr. Chaten's Placement on Intensive Management Status**

All of the acts or omissions complained of by Mr. Chaten occurred while he was incarcerated in MICC between July 6, 2008 and October 2008. ECF No. 9; ECF No. 56, Ex. 1 (Willoughby Dec.), Att. A, p. 12. On July 6, 2008, Chief Investigator Gilbert of the MICC Intelligence and Investigations Office (IIU) received a report that Mr. Chaten's cell mate had reported to an MICC Correctional Officer that he had been sexually assaulted by Mr. Chaten. ECF No. 56, Exh. 6 (Declaration of George Gilbert), ¶5. Mr. Chaten was referred by the Unit Shift Lieutenant for placement in administrative segregation on July 6, 2008 pending investigation into allegations that he sexually assaulted his cellmate. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶¶5, 7; Ex. 3 (Fitzpatrick Dec.), ¶10; Ex. 4 (Denzer Dec.), ¶10; Exhibit 7 (Declaration of Michael Hines), ¶5; ECF No. 52,  8.

REPORT AND RECOMMENDATION - 8

During Chief Investigator Gilbert's investigation into the complaining inmate's allegations that Mr. Chaten sexually assaulted him, Chief Investigator Gilbert interviewed DOC staff witnesses and offender witnesses, and obtained witness statements. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶8. The Pierce County Sheriff's Office was notified of the allegation and began an investigation. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶9; Ex. 2 (Wright Dec.), ¶15. Chief Investigator Gilbert interviewed Mr. Chaten on August 4, 2008 and August 28, 2008. *Id.* Mr. Chaten denied sexually assaulting another offender. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶8; Ex. 4 (Denzer Dec.), Attachments B, C and E. Based on his investigation, Chief Investigator Gilbert concluded that probable cause existed to believe that offender Adrian Chaten had committed a sexual assault against his cellmate. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶8. Chief Investigator Gilbert notified the Pierce County Sheriff Office and the Pierce County Prosecutor's office that evidence and information from witnesses had been collected and he forwarded a copy of his investigative report to the Pierce County Prosecutor's Office. *Id.*, Ex. 6 (Gilbert Dec.), ¶8.

During his first two months in administrative segregation, Mr. Chaten attended weekly review hearings with the segregation unit Administrative Hearing Officer Ryan Denzer. ECF No. 56, Ex. 2 (Wright Dec.), ¶12; Ex. 4 (Denzer Dec.), ¶¶3, 4, 5, 11 and 13; Ex. 3 (Fitzpatrick Dec.), ¶6. Mr. Chaten never requested a witness or a witness statement during any of his weekly administrative segregation review hearings between July and October of 2008. *Id.*, Ex. 4 (Denzer Dec.), ¶21 and Attachment J.

On September 9, 2008, MICC Chief Investigator Gilbert was aware that the Pierce County Sheriff's Office was still conducting its investigation and the Pierce County Prosecutor's Office was reviewing the case. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶9. Based upon his investigation, Chief Investigator Gilbert informed Mr. Chaten's Classification Counselor Denzer

REPORT AND RECOMMENDATION - 9

and the other two members of the MICC F-Unit Facility Risk Management Team (FRMT), that "probable cause existed to indicate a crime was committed" and recommended that Mr. Chaten be placed on IMU status pending new charges.  ECF No. 56, Ex. 6 (Gilbert Dec., ¶9); Ex. 4 (Denzer Dec.), ¶4.   Mr. Gilbert based his recommendation on his belief that Mr. Chaten's behavior was a threat to the orderly administration of the MICC facility and to other offenders. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶10.

On September 12, 2008, three days following Mr. Gilbert's recommendation, Classification Counselor Denzer gave Mr. Chaten a copy of DOC Form 05-797, Administrative Segregation/IMU Hearing Appearance Waiver for his upcoming classification hearing.  ECF No. 56, Ex. 4 (Denzer Dec.), ¶20.  Unlike the prior Administrative Segregation/ IMU Hearing Appearance Waivers that Mr. Denzer had previously given to Mr. Chaten, the September 12, 2008 clearly indicated that the "REASON" for that hearing was for "FRMT – Transfer to IMU/ongoing investigation."  ECF No. 56, Ex. 4 (Denzer Dec.),¶19, and Attachment G, DOC Form 05-797, Administrative Segregation/IMU Hearing Appearance Waiver dated 9/12/08.  The Form 05-797 given to Mr. Chaten also informed him that he had the right to review all related reports and a summary of any confidential information; that he could request a staff advisor; that he could request an interpreter if he is unable to speak or understand the English language; that he could request a certified sign language interpreter if he is hearing impaired; that he had the right to appeal; and, that he had the right to be present at all stages of the meeting except during discussion involving information from confidential sources.  *Id.*  Mr. Chaten acknowledged receipt of the form and waived his rights to review related reports and to request a staff advisor or interpreters.  He also waived his right to 48 hours notice prior to the classification hearing.  *Id.* Mr. Chaten did not request any written witness statements.  *Id.*

REPORT AND RECOMMENDATION - 10

At the conclusion of the September 12, 2008 Classification Review meeting, Mr. Denzer informed Mr. Chaten that the Intelligence and Investigations Office recommended that he be placed on an IMU program and that the FRMT was recommending at least a 6 month program. ECF No. 56, Ex. 4 (Denzer Dec.), ¶20 and Attachment H, Administrative Segregation Review dated 9/12/08. Mr. Chaten signed the Administrative Segregation Review document at the end of the September 12, 2008 review hearing. *Id.*

Mr. Chaten did not request witnesses or witness statements for his October 3, 2008 classification review hearing. ECF No. 56, Ex. 4 (Denzer Decl.), ¶ 22 and Attachment K. On October 3, 2008, the FRMT held another hearing and noted as the reason for placement: AD SEG PENDING DEMOTION MAX CUSTODY WITH A TRANSFER TO ANOTHER IMU. ECF No. 56, Ex. 4 (Denzer Dec.), ¶ 22 and Attachment L .

The FRMT's recommendation to Correctional Program Manager Fitzpatrick was based on Mr. Chaten's criminal history which included 5 counts of Rape in the First Degree, a Second Degree Robbery conviction, his infraction history which included a guilty finding for a sexual conduct offense, and Chief Investigator Gilbert's recommendation. ECF No. 56, Exh. 4 (Denzer Dec.), ¶¶20, 22, 23 and Attachments M and N; Ex. 5 (Flemming Dec.), ¶6; Ex. 7 (Hines Dec.), ¶6.

According to Classification Counselor Denzer, Mr. Chaten's retention in administrative segregation was not disciplinary in nature. For the first sixty days, he was retained pending investigation. ECF No. 56, Exh. 4 (Denzer Decl.), ¶ 24. After the F-Unit FRMT received Chief Gilbert's recommendation that Mr. Chaten be placed on an IMU Program, his retention in administrative segregation was to permit finalization of his Custody Facility Classification plan, and transfer to another facility. *Id.*

On October 7, 2008, Daniel Fitzpatrick reviewed the FRMT's recommendation, Mr. Chaten's records and Custody Facility Plan. Mr. Fitzpatrick is the MICC Superintendent Designee, a Correctional Program Manager (CPM), and a FRMT member. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶13. Mr. Fitzpatrick also reviewed the Offender Management Network Information database (OMNI) which showed that Mr. Chaten was serving a sentence (since 1998) for 2 counts of Rape in the First Degree and 1 count of Robbery in the Second Degree. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶12; Ex. 1 (Willoughby Dec.), Att. A at p. 4. In addition to his current sentence for rapes and robbery, Mr. Chaten was also convicted of 2 other counts of Rape in the First Degree. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶12; Ex. 1, Attach. A at p. 4.[1] Mr. Fitzpatrick also reviewed Mr. Chaten's DOC record which included major prison disciplinary code violations including one of a sexual nature (WAC 137-25-030(504) rule violation (engaging in sexual acts with others within the facility)), as well as the administrative segregation information. ECF No. 56, Exh. 3 (Fitzpatrick Dec.), ¶ 13.

Mr. Fitzpatrick concluded that Mr. Chaten's crimes, serious infraction history, and the then-pending investigation, suggested an extensive criminal history of sexual offenses which made Mr. Chaten a threat to the orderly administration of MICC as well as to other offenders and staff. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶14. He concurred with the FRMT's

---

[1] DOC's Offender Management Information Network (OMNI) database reflects that the lengthiest of offender Adrian Chaten's (DOC #737908) current sentences are two 341-month sentences for two counts of First Degree Rape imposed on April 17, 1998. ECF No. 56, Ex. 4 (Denzer Dec.), ¶23, and Attachments M and N; Ex. 2 (Wright Dec.), ¶10; Ex. 1 (Willoughby Dec.), Att. A, pp. 3-4. Mr. Chaten is also serving sentences for three other counts of First Degree Rape and 1 one count of Second Degree Robbery. ECF No. 56, Ex. 2 (Wright Dec.), ¶10); Ex. 1, Att. A., pp. 4-5. Mr. Chaten's Earned Release Date (ERD) is presently October 17, 2054. ECF No. 56, Ex. 2 (Wright Dec.), ¶10; Ex. 1, Att. A., p. 1.

recommendation that Mr. Chaten be placed on an IMS (Intensive Management Status) program. *Id.*, ¶14.

Acting as Superintendent Van Boening's designee and in accordance with applicable DOC policies, Mr. Fitzpatrick indicated his concurrence with the FRMT and forwarded the Custody Facility Plan with his recommendation to the Prisons Deputy Director/designee at DOC Headquarters for review and approval or change. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶14; ECF No. 54-1, p. 10 (DOC 320.200) and p. 46 (DOC 320.250). The Prisons Deputy Director/ designee is responsible for making the final decisions regarding any Facility Plan, including whether to place an inmate on IMU status. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶15; ECF No. 54-1, p. 10 (DOC 320.200) and p. 46 (DOC 320.250).

In early October 2008, Mr. Chaten was given an IMU program by the Prisons Deputy Director/designee at DOC Headquarters after review of the FRMT's Custody Facility Plan and program recommendation. ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶¶14-16; Ex. 2 (Wright Dec.), ¶¶12 and 13; Ex. 4 (Denzer Dec.), ¶¶7, 15; Ex. 5 (Flemming Dec.), ¶¶5, 8 and 9. According to the Custody Facility Plan, on October 15, 2008, Mr. Chaten was assigned Intensive Management Status/MAX Custody with the following expectations: 6 months infraction free behavior, complete Offender Change Programming, develop a Behavior Management Plan, obtain/maintain Level IV and transfer to WCC-IMU, per Steve Ramsey (now retired). ECF No. 56, Ex. 3 (Fitzpatrick Dec.), ¶16 and Attachment B, p. 3.

Mr. Chaten appealed the IMU program decision. ECF No. 52, p. 10. On October 20, 2008 Prisons Deputy Director Wright wrote to Mr. Chaten stating that, based upon his review, "I learned that your cellmate was transported to an outside hospital for a sexual assault examination and the Pierce County Sheriff's office was notified due to an allegation that you [sexually

assaulted] him." ECF No. 56, Ex. 2 (Wright Dec.), ¶15 and Att. A. Mr. Wright further stated that DOC has a zero tolerance for offender rape/sexual assault, that the ongoing investigation involved the Pierce County Sheriff's Department, that Chief Investigator Gilbert had recommended him for an IMU program, and that DOC policy 320.250 permits offenders who present a safety threat to be recommended for IMU status. *Id.*

According to the Offender Management Information Network (OMNI) database, Mr. Chaten was transferred from MICC to the Washington Corrections Center IMU on October 23, 2008. ECF No. 56, Ex. 6 (Gilbert Dec.), ¶14; Ex. 1, Att. A, p. 9. Mr. Chaten did not return to MICC after he completed his program and was not subsequently issued an infraction based upon his former cellmate's allegations. *Id.*, Exh. 6 (Gilbert Dec.), ¶14.

On February 13, 2009, the Pierce County Prosecuting Attorney's Office notified Chief Investigator Gilbert of their decision not to prosecute Mr. Chaten because "this case could not be proven in court." ECF No. 56, Exh. 1 (Gilbert Decl.), ¶ 12, Attach. D.

## STANDARD OF REVIEW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023-24 (9th Cir. 2004). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 14

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a "person acting under color of state law," (2) and his conduct must have deprived the plaintiff of "rights, privileges or immunities secured by the Constitution or laws of

the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds in *Daniels v. Williams*, 474 U.S. 327 (1986)). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977). When a plaintiff fails to establish one of the three elements, his claim must be dismissed. As noted above, the only claim remaining in this action is Mr. Chaten's claim that he was denied due process when he was assigned to the IMU program.

**A.    Due Process Violation**

An inmate is entitled to due process before discipline is imposed that results in an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Before determining what process is due, however, there must be a "protected liberty interest" at issue. *Wolff v. McDonald*, 418 U.S. 539, 556-57 (1974). Classification, however, is merely an incident of prison life. *In Re Dowell*, 100 Wn.2d 770, 772-73, 674 P.2d 666 (1984) (transfer among various security classifications is within the expected terms of confinement for a prisoner and is not protected by the due process clause); *see also Hewitt v. Helms,* 459 U.S. 460, 468, 103 S. Ct. 64, 74 L.Ed.2d 675 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")

Even if the State could create a liberty interest in an inmate's placement in administrative segregation, it is clear that the State of Washington has not done so. *See Smith v. Noonan*, 992 F.2d 987, 989 (1993) ("the Code's permissive language and its nonparticularized standards do not create a liberty interest that requires that [the prisoner] remain in the general prison population.") "A liberty interest does not arise even when administrative segregation imposes

REPORT AND RECOMMENDATION - 16

'severe hardships,' such as 'denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to [one's] cell for lengthy periods of time.'" *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) (quoting *Hewitt*, 459 U.S. at 468.

Mr. Chaten complains that he was deprived of due process when his classification level was changed and he was placed in an IMU program without a hearing. The undisputed facts show Mr. Chaten was initially placed in administrative segregation pending investigation of his cell mate's claim that Mr. Chaten had sexually assaulted him as permitted pursuant to DOC Policy 320.200. Two months later, the FRMT recommended that Mr. Chaten be given an IMU program because of Mr. Chaten's criminal history, his infraction history and the recommendation of Chief Investigator Gilbert. ECF No. 56, Exh. 4 (Denzer Dec.), ¶¶20, 22, 23 and Attachments M and N; Ex. 5 (Flemming Dec.), ¶6; Ex. 7 (Hines Dec.), ¶6. It is also undisputed that following an investigation by the DOC and the Pierce County Prosecutor's office, Mr. Chaten was not charged with sexual assault and he did not receive an infraction.

What is in dispute is whether the change to Mr. Chaten's classification and his subsequent assignment to an IMU program was punitive. According to Chief Investigator Gilbert, these decisions were based on Mr. Chaten's behavior and a belief that Mr. Chaten was a threat to the "orderly administration of the MICC facility, and to other offenders." ECF No. 56, Exh. 6 (Gilbert Dec.), ¶10. According to Classification Counselor Denzer, Mr. Chaten's retention in administrative segregation was not disciplinary in nature. For the first sixty days, he was retained pending investigation. ECF No. 56, Exh. 4 (Denzer Decl.), ¶ 24. After the FRMT received Chief Gilbert's recommendation that Mr. Chaten be placed on an IMU program, Mr.

Chaten's retention in administrative segregation was to permit finalization of his Custody

Facility Classification Plan and transfer to another facility. *Id.*

Mr. Chaten alleges that placement in the IMU program affected his ability to program

within MICC and further his education, and that the placement caused him to lose classification

points which determine the level of liberty an offender has while at MICC. While Mr. Chaten

would doubtlessly benefit from such programs, the question here is whether Mr. Chaten has

substantiated his claim that placement in the IMU program and increase in his security

classification constitutes an "atypical and significant hardship … in relation to the ordinary

incidents of prison life." *Sandin,* 515 U.S. at 484. The Court finds that Mr. Chaten has not met

this burden.

Mr. Chaten has presented no evidence demonstrating that his continued custody

classification is an unusual hardship, given the ordinary incidents of prison life. While the

programs that Mr. Chaten desires to attend might be beneficial, their denial does not constitute

an exceptional hardship. Additionally, Mr. Chaten's claim that he "lost classification points" as

a result of being confined within the administrative segregation unit, is inaccurate. ECF No. 9,

p. 5. According to Defendants, Mr. Chaten did not *lose* any earned early release credits -- he

simply did not *earn* any credits while he was in the administrative segregation unit. RCW

72.09.130(1) ("The department shall adopt, by rule, a system that clearly links an inmate's

behavior and participation in available education and work programs with the receipt or denial of

earned early release days and other privileges.") An offender has no constitutionally created or

state-created liberty interest in earned time credits that have not yet been awarded. *In re Galvez*,

79 Wn. App. 655, 657, 904 P.2d 790 (1995), citing *Wolff*, 418 U.S. 539.

Notwithstanding the foregoing and assuming *arguendo* that Mr. Chaten has established a liberty interest in his placement in segregation, classification, unearned early release credits, and/or programming, the record reflects that he received due process.

**B.    Due Process Requirements**

With respect to placement in administrative segregation, due process requires that (1) prison officials provide notice of their reasons for segregating an inmate within a reasonable time after placement in segregation; (2) the inmate be allowed to make a statement presenting the inmate's views, and (3) the inmate be given periodic reviews of the continued placement in administrative segregation. *Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir. 1986); *Hewitt v. Helms,* 459 U.S. 460 (1983).[2]

The undisputed evidence shows that Mr. Chaten attended weekly administrative segregation reviews and received a classification review hearing two months after his placement in administrative segregation.  For each hearing, Mr. Chaten had the right to provide witness statements but declined to provide any witness statement.   ECF No. 56, Ex. 4 (Denzer Dec.), ¶¶21, 22 and Attachments.   Mr. Chaten was given notice prior to the September 12, 2008 Classification Review.  The Form 05-797 given to Mr. Chaten clearly indicates that the reason for the hearing was:  "FRMT – Transfer to IMU/ongoing investigation."  ECF No. 56, Exh. 4 (Dezer Dec.), ¶ 19 and Attach. G (Form 05-797).  The form also informed Mr. Chaten that he had the right to review all related reports and a summary of any confidential information; that he

---

[2] Where the loss of a protected liberty interest is the result of a disciplinary hearing decision, due process requires more:  (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (*citing Wolff v. McDonald,* 418 U.S. 539, 563-67 (1974).

could request a staff advisor; that he could request an interpreter if he is unable to speak or understand the English language; that he could request a certified sign language interpreter if he is hearing impaired; that he had the right to appeal; and, that he had the right to be present at all stages of the meeting except during discussion involving information from confidential sources. *Id.* Mr. Chaten acknowledged receipt of the form and waived his rights to review related reports, to request a staff advisor and interpreters. He also waived his right to 48 hours notice prior to the classification hearing. *Id.* Mr. Chaten did not request any written witness statements. *Id.*

At the conclusion of the September 12, 2008 Classification Review meeting, Counselor Denzer informed Mr. Chaten that the IIU Office recommended that he be placed on an IMU program and that the FRMT was recommending at least a 6 month program. ECF No. 56, Ex. 4 (Denzer Dec., ¶20), and Attachment H, Administrative Segregation Review dated 9/12/08. Mr. Chaten signed the Administrative Segregation Review document at the conclusion of the September 12, 2008 hearing. *Id.*

Mr. Chaten does not dispute these facts. The record clearly reflects that Defendants provided Mr. Chaten notice of their reasons for segregating him within a reasonable time after he was placed in segregation, he was given periodic reviews of his continued placement in administrative segregation, and he was given numerous opportunities to present his views. Thus, Defendants provided him with due process.

Based on the foregoing, the undersigned recommends that Mr. Chaten's motion for summary judgment be denied. Mr. Chaten failed to meet his initial burden of demonstrating the absence of any genuine issue of material fact to support his motion. Instead he relies entirely on unsworn and unsupported allegations that his constitutional rights have been violated. Further, in response to Defendants' motion for summary judgment, Mr. Chaten failed to set forth specific

REPORT AND RECOMMENDATION - 20

facts to show a genuine issue for trial. He produced no significant probative evidence tending to support the allegations in his complaint. Mr. Chaten's unsupported allegations are insufficient to survive Defendants' motion for summary judgment and his claims against them should be dismissed.

**B.     Eleventh Amendment Immunity**

The Eleventh Amendment to the United States Constitution bars citizens from bringing lawsuits against states in federal courts. *See Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73 (1987). A state agency is not a "person" under 42 U.S.C. § 1983, nor is a state official acting in his or her official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* (citations omitted).

Mr. Chaten's claims have been brought against each Defendant individually and because of their respective positions within DOC as either investigator (Defendant Gilbert) or as members of the FRMT (Defendants Hines, Flemming and Denzer). These Defendants are subject to Eleventh Amendment immunity and all claims against them in their professional capacities should be dismissed.

**C.     Qualified Immunity**

Defendants also argue that all claims brought against them personally should be dismissed pursuant to the doctrine of qualified immunity. As the undersigned finds that Mr. Chaten has failed to establish a constitutional violation, it need not reach the question of whether Defendants are entitled to qualified immunity.

**CONCLUSION**

Based on the foregoing, the undersigned recommends that Plaintiff's motion for summary judgment (ECF No. 51) be **DENIED** and Defendants Denzer, Flemming, Gilbert, and Hines' Motion for Summary Judgment (ECF No. 56) be **GRANTED** and all claims against them in this action be **Dismissed With Prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 18, 2011**, as noted in the caption.

**DATED** this  19th  day of October, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22